The 1996 revision of the Alabama State Health Plan ("SHP") included the addition of 72 new skilled nursing facility beds in Baldwin County. This case concerns the applications of three competing entities to the State Health Planning and Development Agency ("SHPDA") for authorization to supply those beds. Living Centers, Inc., sought 37 of these beds. Beverly Enterprises-Alabama, Inc. ("Beverly"), and Mercy Medical ("Mercy") each sought all 72 beds. The Certificate of Need ("CON") Review Board examined all three applications. At the conclusion of a public hearing on these applications, the CON *Page 1191 
Review Board awarded all 72 beds to Mercy. Beverly appealed to a Fair Hearing Officer ("FHO"). The FHO reversed the CON Review Board's ruling and remanded. Mercy appealed that ruling to the Baldwin County Circuit Court, which reversed the ruling of the FHO. Beverly appealed to the Court of Civil Appeals, which affirmed on June 9, 2000, without an opinion.Beverly Enters.-Alabama, Inc. v. Mercy Med. Corp. (No. 2990160),795 So.2d 850 (Ala.Civ.App. 2000) (table). This Court granted certiorari review. We reverse and remand.
Beverly had proposed, in its application, to combine the 72 new beds with 20 other beds from 2 of its existing nursing homes in Baldwin County, resulting in a new facility with a total of 92 beds. Beverly planned to offer a comprehensive range of services, including a designation of 20 beds for a Medicare-certified skilled-nursing unit and 16 beds for an Alzheimer's unit. (R. 11 and SHPDA AL-97012: p. 87.) Beverly projected a total cost of $6,640,820. Mercy proposed to construct a 72-bed facility that would have offered, in its words, "a basic level of care." (SHPDA AL-97015: p. 58.) Mercy projected a total cost of $5,242,961.
The Alabama Administrative Code prescribes 18 different standards for the CON Review Board to use when applicants are competing for available beds. See Ala. Admin. Code (State Health Planning and Development Agency), Rule 410-1-6-.01 through .18. The CON Review Board subsequently voted 4-3 to award all 72 beds to Mercy. Beverly appealed this decision to an FHO, asserting that the CON Review Board had made substantial errors of fact and law, had violated fixed standards, had failed to apply the correct criteria, and had acted in an arbitrary and capricious manner.
The FHO determined that the CON Review Board had based its decision on an arbitrary or capricious interpretation of four of the standards specified by Rule 410-1-6 of the Alabama Administrative Code. First, the CON Review Board found that Beverly's proposal necessitated higher expenditures in terms of both overall construction costs and per-bed costs. Rule 410-1-6-.04(1) provides: "The availability of less costly . . . alternatives to the proposed facility . . . will be considered." Rule410-1-6-.14 provides: "All construction projects shall be designed and constructed with the objective of maximizing cost containment . . . . The impact of the construction costs . . . shall be considered." Section410-1-6-.18 provides: "No certificate of need for new inpatient facilities or services shall be issued unless the [CON] Review Board makes . . . the following [finding]: . . . (b) that less costly, more efficient or more appropriate alternatives to such inpatient service are not available . . . ." The CON Review Board concluded that Beverly's proposal would cost more than $6.6 million, or approximately $92,000 per bed (para. 4, AL-97012), while Mercy's proposal would cost more than $5.2 million, or approximately $73,000 per bed (para. 4, AL-97015). The FHO found, however, that the CON Review Board had miscalculated the cost of Beverly's proposal by calculating its estimated per-bed expense on the basis of 72, not 92.[1] Beverly's actual cost, when divided by 92, was slightly over $72,000 per bed. Consequently, the cost of Beverly's proposal was approximately $600 per bed less than the cost of Mercy's proposal. The FHO found that the CON Review Board's *Page 1192 
reliance on this faulty computation constituted a substantial error. Mercy's allegedly less expensive plan was further flawed because Mercy's estimate, unlike Beverly's, assumed no development expenses. The FHO found that these factual errors had caused the CON Review Board to improperly apply Rules 410-1-6-.04, 410-1-6-.14, and 410-1-6-.18
to its analysis of these competing proposals.
Second, the CON Review Board favored Mercy's proposal for a narrower range of services over Beverly's proposal for a broader range of services. Rule 410-1-6-.05(1) provides: "Determination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure shall be made before approval may be granted." Rule 410-1-6-.06(1)(a) provides: "The need that the population served or to be served has for the services proposed to be offered, expanded, or relocated, will be considered." The FHO determined that the CON Review Board had violated another fixed standard by choosing Mercy's plan, which provided for "a basic level of care" (SHPDA AL-97015: p. 58), over Beverly's plan, which provided for a broader range of services, including specialized Medicare and Alzheimer's units. (SHPDA AL-97012: p. 87.) The FHO correctly noted that this contradicted the fixed standard in the State Health Plan: "[T]o ensure that comprehensive services are available . . ., nursing homes should provide, or should have agreements with other healthcare providers to provide, a broad range of care." Rule410-2-4-.03(7)(a)(1); the FHO found that, to the extent the CON Board had mistakenly applied this fixed standard, "it did so without reasonable justification and outside of fixed standards." (Report of the FHO, pg. 6.) The FHO ruled that this violation of Rule 410-1-6-.05 and .06 and Rule 410-2-4 was arbitrary or capricious.
Third, Rule 410-1-6-.07(1) provides: "The contribution of the proposes [sic] service or facility in meeting the health related needs of traditionally medically underserved groups . . . particularly those needs identified in the appropriate state plan will be considered." Rule410-1-6-.07(1)(c) provides: "[T]he state agency will consider . . . the extent to which the unmet needs of Medicare . . . are proposed to be served by the applicant." The FHO stated:
 "In addition, in its written ruling as to the application of Mercy Medical, the [CON Review] Board concluded that the `construction of an additional nursing home facility [by Mercy Medical] to care for those patients who require a lesser level of therapy
would broaden the scope of healthcare services for residents of Baldwin County.' Ruling of [CON Review Board], Mercy Medical ¶ 9. (Emphasis added.) This finding constitutes a near verbatim lifting of the statement of Mercy Medical at page 4 of its application. However, Mercy Medical's application differs in one critical aspect[;] it merely asserts that the granting of its application would `broaden the scope of healthcare services that Mercy Medical
can make available to the citizenry of Baldwin County.' Mercy Medical's application, p. 4 (Emphasis added.) To the extent that the [CON Review] Board, perhaps unwittingly, based its favorability finding for Mercy Medical on an institutional need as opposed to a `public requirement' or `community need', it acted inconsistent with prescribed standards. See generally CON Rules 410-1-6-.05 and 410-1-6-.06."
(Report of the FHO, pp. 6-7.) (Emphasis original.) In this decision, the CON Review Board deviated from this fixed standard by favoring Mercy's plan for 72 beds at a "basic level of care" (SHPDA AL-97015: p. 87) over Beverly's proposal for *Page 1193 
36 beds at a "basic level of care" and 36 beds dedicated to a Medicare-certified skilled-nursing unit and an Alzheimer's unit (R. 11 and SHPDA AL-97012: p. 87). This violated the fixed standard of Rule410-1-6-.07(1)(c), which specified a preference to "the extent to which the unmet needs of Medicare, Medicaid, and medically indigent patients are proposed to be served by the applicant." On that basis, Mercy's proposal was good, but Beverly's proposal was better, because Beverly's proposal more fully achieved the goal codified in Rule410-1-6-.07(1)(c). The FHO stated that the CON Review Board had enshrined this error in its record by quoting Mercy's application, stating that Mercy's proposal would "broaden the scope of health care services thatMercy Medical can make available to the citizenry of Baldwin County," and then substituting "residents of Baldwin County" for "Mercy Medical." (Emphasis added.) The CON Review Board thus elevated Mercy's institutional interest over Baldwin County's community interest, contrary to Rule 410-1-6-.07(1)(c). The FHO ruled that the violation of this fixed standard was arbitrary or capricious.
Fourth, Rule 410-1-6-.06(1)(e) provides that the "probable effect of the proposed facility or service on existing facilities or services providing similar services to those proposed shall be considered." The FHO noted that Beverly's plan to transfer 20 outdated beds from 2 of its existing nursing homes would have substantially improved those facilities, thus achieving the goal of Rule 410-1-6-.06(1)(e). The FHO determined that the CON Review Board had wrongly applied this standard by erroneously concluding that the Board would have to enable Living Centers nursing homes to eliminate its outdated beds if the Board enabled Beverly nursing homes to eliminate its outdated beds. The FHO found that the questions and comments of the CON Review Board members, at the hearing on this dispute, proved that the CON Review Board had committed this error. The following colloquy had occurred between two members of the CON Review Board at that hearing:
 "Dr. Philpott: . . . Mercy Medical has proven to be a good provider. The problem — not that I want to speak against my own motion. The problem I have with my motion [to approve Mercy Medical] is it's very appealing to get rid of the [outdated beds and overcrowded wards] at the other facilities. But I have the same problem with what do you do with the other —
"Mr. Haughton: Right.
 "Dr. Philpott: — thirty-five beds. And if you split those, you end up with Beverly only getting a fifty-five bed facility. And that just doesn't seem like the thing to do. That's why I make the motion for Mercy Medical."
(CON Review Board Transcript at p. 57, as quoted in Report of the FHO, pp. 10-11.) Dr. Philpott's confusion appeared to result from the misconception that if the CON Review Board awarded some beds to Beverly because of the positive impact that would have on Beverly's existing nursing homes, then the CON Review Board would also have to award some of these new 72 beds to Living Centers, because of the positive impact that would have on Living Centers existing nursing homes. This misconception, however, was not mandated by Rule 410-1-6-.06(1)(e). Dr. Philpott's belief, evidenced by his remarks that "it's very appealing to get rid of the [outdated beds and overcrowded wards]" at Beverly's other facilities, but expressing the view that the CON Review Board must then enable Living Centers to rid itself of its outdated beds and overcrowded wards, was not valid. This misconception explains the second paragraph of his *Page 1194 
remarks quoted above. The CON Review Board had adopted a policy, for reasons of financial feasibility, to strongly disfavor facilities with fewer than 50 beds. To eliminate the outdated beds and overcrowded wards for both Beverly and Living Centers, the CON Review Board would have been required to grant Living Centers' application for 37 beds, in order for Living Centers to consolidate its capacity. The CON Review Board, however, could then have granted only 35 new beds to Beverly. Beverly, by combining its 20 outdated beds with these 35 new beds, would have had to construct a facility for 55 total beds, barely above the 50-bed minimum. The CON Review Board ultimately chose Mercy over Beverly, by a vote of 4-3. Accordingly, this confusion on the part of at least two of its members (Dr. Philpott and Mr. Haughton) concerning the interpretation of Rule 410-1-6-.06(1)(e) was apparently dispositive. By refusing to comply with this mandate in terms of Beverly, because of the difficulty of complying in terms of Living Centers, the CON Review Board made the perfect the enemy of the good. The CON Review Board thus failed to comply with Rule 410-1-6-.06(1)(e) and therefore violated this fixed standard.
The FHO consequently concluded:
 "[I]t is the opinion of the undersigned that the Rulings of the State Agency in the above-captioned matter were arbitrary or capricious. Certain justifications given either are not reasonable in that they are based on erroneous or arbitrary conclusions of fact or are not made based upon fixed standards as to which applications are to be measured. . . . It simply is the opinion of the undersigned that the Board, in reaching its decision, did not base that decision on applicable standards or justifiable factual conclusions. There is nothing in the record, however, to indicate that, once the Board corrects the errors in its factual conclusions and applies the fixed standards prescribed by the CON Rules, it cannot make an appropriate decision . . . . Therefore, the undersigned is given no option under the regulations other than to remand this case to the Board for further proceedings consistent with this Order."
(Report of the FHO, p. 13., R. 392.)
Mercy appealed the final decision of the FHO to the Baldwin County Circuit Court. That court reversed the FHO's order, entering the following on the case action summary:
 "This Court finds that the FHO acted unreasonabl[y], arbitrar[ily], and capricious[ly] in his review. The Court reverses the final decision of the SHPDA and the ruling of the FHO dated 12-31-98. The Court reinstates the decision of the CON Board and finds that the record supports the CON Board's decision that Mercy Medical is the most appropriate applicant to be awarded the 72 skilled nursing home beds for Baldwin County."
(See Beverly's certiorari petition, Exhibit B.)
The Court of Civil Appeals affirmed the judgment of the circuit court, without an opinion. In its petition for certiorari review, Beverly claims that the holding of the Court of Civil Appeals conflicts with that ofForest Manor, Inc. v. State Health Planning Development Agency,723 So.2d 75 (Ala.Civ.App. 1998), in two areas. It argues (1) that the opinion of the Court of Civil Appeals conflicted with its holding inForest Manor that the CON Review Board's wrongful application of its review criteria renders the decision arbitrary, and (2) that the decision by the Court of Civil Appeals to reinstate the CON Review Board's original award deviated from the scope of review set forth in ForestManor. *Page 1195 
 I.
The standard of judicial review applied to rulings of administrative agencies differs from that applied to rulings of trial courts. An appellate court will affirm a ruling of a lower court if there is any valid reason to do so, even a reason not presented to — or rejected by — the lower court. See McKenzie Methane Corp. v. M-W Drilling,Inc., 653 So.2d 982, 984 (Ala. 1995). See also Smith v. Equifax Servs.,Inc., 537 So.2d 463 (Ala. 1988). When reviewing the decision of an administrative agency, however, an Alabama court will affirm only if the action and the stated basis for the action are correct.
 "[As this court is required to do,] the circuit court . . . was required to look to the Commissioner's decision and the reasons she gave for denying reimbursement. Where such decision is shown to be arbitrary and capricious, no posthoc rationalizations or theories for denying reimbursement can correct it."
Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1333
(Ala.Civ.App. 1987). The FHO ruled that the Board's award of the 72 beds to Mercy was flawed because of each of the four defects noted above: the material error as to the cost data, the preference for a plan with a narrower range of services, the confusion as to the broadest "scope of healthcare services" from a "community" versus an "institutional" perspective, and the impact of the CON Review Board's decision on existing nursing homes in Baldwin County.
 II.
The Court of Civil Appeals has clearly stated the standard of review a circuit court is to use when reviewing the ruling of a fair hearing officer:
 "'[T]he decision of the fair hearing officer is the final decision of the Board.' Methodist Homes for the Aging Corp. v. Stewart, 594 So.2d 161, 163
(Ala.Civ.App. 1992) (citing § 22-21-275(14), Ala. Code 1975); see also Ala. Admin. Code Rule 410-1-8-.26
(`The decision of the [FHO] shall be considered the final decision of [SHPDA]'). Thus, it is the FHO's decision, and not the [CON Review Board's] decision, that is entitled to a presumption of correctness on appeal; thus, the pertinent question raised by Forest Manor's appeal is whether the FHO's order was `arbitrary, capricious, or fail[ed] to comply with applicable law.' [State Health Planning Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985)]."
Forest Manor, 723 So.2d at 79 (emphasis added).
Just as the FHO is prohibited from substituting his or her judgment for that of the CON Review Board, the circuit court and the Court of Civil Appeals are likewise prohibited from substituting their judgments for that of the FHO. In Forest Manor, the main dispute centered on which entity was entitled to the presumption of correctness on appeal — the CON Review Board or the FHO. The Court of Civil Appeals properly resolved the dispute in that case in favor of the FHO:
 "Thus, because the FHO's order (and not the CONRB's order) is the final agency decision to which a presumption of correctness applies, we must determine whether his conclusions . . . were themselves `arbitrary, capricious, or [contrary to] applicable law.'"
Forest Manor, 723 So.2d at 80. See also, Ala. Administrative Code, Rule410-1-8-.26. "[T]he agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . ." § 41-22-20(k), Ala. Code 1975. "The decision of *Page 1196 
the fair hearing officer is the final decision of the Board." Alacare Home Health Servs.,Inc. v. Baptist Hosp. of Gadsden, Inc., 655 So.2d 995, 996 (Ala.Civ.App. 1994).
We must conclude that in this present case the decision of the circuit court conflicted with Forest Manor, supra, because in this case the circuit court substituted its judgment for that of the FHO. The circuit court reinstated the CON Review Board's award, but only after reweighing the facts and holding that "Mercy Medical is the most appropriate applicant to be awarded the seventy-two skilled nursing home beds." This decision exceeded the scope of its review. Again, the FHO determined:
 "[I]t is the opinion of the [FHO] that the Rulings of the State Agency in the above-captioned matter were arbitrary or capricious. Certain justifications given either are not reasonable in that they are based on erroneous or arbitrary conclusions of fact or are not made based upon fixed standards as to which applications are to be measured . . . . It simply is the opinion of the [FHO] that the Board, in reaching its decision, did not base that decision on applicable standards or justifiable factual conclusions."
(Report of the FHO, pp. 13, R. 392.)
According to the FHO, the four flawed facets of the CON Review Board's decision in favor of Mercy established that that decision was arbitrary and capricious. We fail to see how the circuit court could have determined that the FHO's decision was "arbitrary, capricious, or fail[ed] to comply with applicable law." Forest Manor, 723 So.2d at 79. We must conclude that the circuit court erred by not deferring to the decision of the FHO. Consistent with Forest Manor, supra, at 78, andMethodist Homes, supra, at 163, the FHO's conclusion was the final decision of the CON Review Board and was thus entitled to a presumption of correctness. Having correctly determined that the CON Review Board had breached its own standards, the FHO properly remanded this dispute to the CON Review Board. The circuit court erred by reversing this ruling of the FHO.
The judgment of the Court of Civil Appeals is therefore reversed, and this case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] The CON Review Board assessed the cost per bed for Beverly's proposal at $92,233.61. This computation resulted from the division of the total project cost ($6,640,820) by 72 beds. (para. 4, AL-97012).