DONALDSON, Judge.
The Alabama Department of Public Health ("the Department") appeals from a judgment of the Montgomery Circuit Court reversing the decision of the State Health Officer to disqualify First Avenue Meat and Fish Market ("First Avenue"), a grocery store owned by Su Won Lee ("Mr. Lee"), from participating for three years as an authorized vendor in the Alabama Women, Infants, and Children program ("the WIC program"). We reverse the judgment of the circuit court.
Factual Background and Procedural History
We have previously provided an explanation of the WIC program in a related case.[1]
"The United States Congress created the WIC program in 1966 primarily to provide supplemental dietary and nutritional aid to low-income pregnant, breast-feeding, and non-breast-feeding postpartum women and to infants and children up to age five who are found to be at nutritional risk. See 42 U.S.C. § 1786(a). The United States Department of Agriculture ('USDA') issues cash grants to the various states to administer the WIC program. See generally 42 U.S.C. § 1786(c)(2) ;
*865 7 C.F.R. § 246.1. The USDA requires appropriate state agencies to use a portion of those cash grants to deliver approved supplemental foods and nutritional aid to eligible participants. 42 U.S.C. § 1786(f)(11).
"The Department administers the WIC program for the State of Alabama. See Ala. Code 1975, § 22-12C-1 et seq. The Department has adopted a food-delivery system by which it issues 'food instruments' to eligible participants that can be redeemed at authorized retail vendors for approved supplemental foods. See Ala. Admin. Code (Dep't of Public Health), Rule 420-10-2-.05(1). The food instruments designate specific types and quantities of food items that the participant may purchase, i.e., 'one gallon of whole milk.' The participant obtains the described food items at retail stores operated by an authorized WIC vendor and tenders the food instrument as a form of payment for the food items. To accept the food instrument, the vendor stamps the food instrument with the vendor's identification number and fills in the total purchase price of the food items. The participant then signs the food instrument. The vendor deposits the food instrument into its bank account, and the vendor's bank then presents the food instrument for payment at the Department's 'contract bank.' Id.
"The Department assures that its authorized vendors are properly complying with the WIC program and redeeming the food instruments for the purchase of approved supplemental foods through a variety of measures, including monitoring, 'compliance buys,' and inventory audits. See Ala. Admin. Code (Dep't of Public Health), Rule 420-10-2-.05(5).
" 'An inventory audit is the official examination and documentation of a WIC vendor's inventory, accounts, and records to determine whether the vendor has purchased sufficient quantities of supplemental foods to provide participants the quantities specified on the food instruments redeemed by the vendor during a given time period.'
" Rule 420-10-2-.05(5)(c)."
Alabama Dep't of Pub. Health v. Bessemer Meat/Se. Meat, 216 So.3d 448, 449-50 (Ala. Civ. App. 2016).
First Avenue had been approved to participate as a vendor in the WIC program since at least 2011. From July 17, 2013, until September 17, 2013, the Department conducted an inventory audit on First Avenue. In September 2013, at the conclusion of the audit, the Department mailed a letter to Mr. Lee requesting all original records that would show First Avenue's purchases of infant formula and milk between July 17, 2013, and September 17, 2013. In October 2013, the Department sent an additional request to Mr. Lee for receipts and invoices of First Avenue for the same period.
On November 25, 2013, the State Health Officer sent a letter notifying Mr. Lee that, during the inventory audit, the Department had discovered a difference of $7,790.02 between the total retail value of infant formula available for sale at First Avenue and the amount of redeemed WIC-program food instruments for formula. The letter also noted a difference of $3,086.52 between the retail value of First Avenue's available milk inventory and the amount of redeemed WIC-program food instruments for milk. The letter instructed First Avenue to reimburse the Department for the $10,876.54 difference.
In December 2013, the Department sent a letter notifying Mr. Lee of its intent to disqualify First Avenue from participation as an authorized vendor in the WIC program for three years. The Department *866 held an administrative-review hearing regarding the intended action at Mr. Lee's request in March 2014. At the hearing, Amanda Martin, the Alabama WIC-program director, testified that, in order to become an authorized WIC vendor, a vendor must comply with specified program requirements. Martin testified that the Department conducts monitoring visits, compliance buys, and inventory audits in which it reviews the vendor's redemptions and compares them to the vendor's documented inventory to ensure compliance with the WIC-program requirements.
Martin explained that, during an inventory audit, the Department physically counts the initial inventory of a product at the store and then reviews the redemption of food instruments for that product during a specified period. Martin stated that the Department requests inventory receipts for the period for which it audits the vendor.
Stacey Neumann is the director of vendor management for the WIC program. Neumann testified that First Avenue was selected for the inventory audit based on "the amount of redemptions and high risk indicators." Neumann explained that First Avenue had zero variance between the two most highly redeemed food-instrument types, which, she said, is an indicator of price fixing. Neumann also testified that First Avenue had a high redemption rate in comparison to other vendors in its peer group. Specifically, Neumann explained that "First Avenue has one cash register, and their redemptions were comparable to [a] store that has twenty to thirty cash registers," which, she said, "could be indicative of program fraud and abuse."
Neumann participated in the initial physical inventory audit, and she testified that Mi Kyung Lee ("Mrs. Lee") was present during that audit. Neumann testified that Mrs. Lee was asked to obtain the formula receipts and that she retrieved them without any apparent difficulty. Neumann testified that Mrs. Lee appeared to understand the interactions that occurred with Neumann and Don Bird, the investigator.
Bird testified that he did not perceive any problems with Mrs. Lee's understanding of the activities and that there was "good communication." Bird testified that he asked Mrs. Lee the questions contained on the various audit forms and that he input the answers that she gave to him. Upon concluding the audit, Bird found that "there was a huge shortage of the inventory compared to what [First Avenue] had redeemed" and that First Avenue had a shortfall of $7,790.02 in regard to infant formula. Bird further testified that, with regard to its milk inventory versus redemptions, First Avenue had a shortfall of $3,086.52. Bird testified that he asked Mrs. Lee whether there was additional inventory located in the back of the store and that she responded that there was not.
Mrs. Lee testified that she manages First Avenue and that Mr. Lee owns the store. At the time of the administrative-review hearing, she had been in the United States for 14 years, but she is originally from Korea. Mrs. Lee testified that she routinely kept infant formula in the back of the store, that she had around $10,000 worth of infant formula in the back room during the first physical inventory audit, and that she would have informed the investigators of that fact if she had known an audit was being conducted. Mrs. Lee testified that, at the end of the audit period, she probably had about $5,000 worth of infant formula in the back room. Mrs. Lee testified that she was never asked whether there was formula in the back room.
When asked about her signature on the inventory worksheet that certified that the *867 inventory amount was correct, Mrs. Lee testified that she did not read the inventory worksheet but that she signed it because she thought it was routine monitoring. However, Mrs. Lee also testified that she is not required to sign anything during routine monitoring.
With regard to the undocumented milk products, Mrs. Lee initially testified that a storm caused damage to the store and that, as a result, the milk receipts became wet and were ruined. Mrs. Lee also testified that a computer was located on the desk on which the receipts were located but that the computer was not damaged. Mrs. Lee then testified that she had placed the receipts in a box and that the box was misplaced when contractors were making repairs to the storm damage. At the conclusion of Mrs. Lee's testimony, the hearing officer asked Mrs. Lee how she responds to questions that she does not understand. Mrs. Lee stated: "If I don't understand, I want to make sure I understand .... And then I will ask."
In April 2014, after the administrative-review hearing, the hearing officer submitted a detailed opinion recommending that the Department's decision be upheld and determining that First Avenue had engaged in a pattern of claiming reimbursement for the sale of infant formula and milk products in excess of the store's documented inventory for those products. As part of that recommendation, the hearing officer found, in part, that Mrs. Lee's interactions with the Department were not "hampered by a language barrier." The hearing officer also recommended rejecting Mr. Lee's argument that the storm damage referenced by Mrs. Lee prevented him from maintaining the documents as required by the WIC-vendor contract because of a "force majeure." In May 2014, the State Health Officer adopted the hearing officer's recommendation and entered an order disqualifying First Avenue from participating as a vendor in the WIC program for three years.
On June 16, 2014, Mr. Lee filed a petition for judicial review in the circuit court, pursuant to § 41-22-20, Ala. Code 1975. The record does not contain a transcript of any proceedings before the circuit court. On May 13, 2015, the circuit court entered an order reversing the State Health Officer's decision, finding, in part, that the hearing officer had committed an error of law by failing to interpret Mr. Lee's compliance with the WIC contract in light of contract-law principles and defenses, that the hearing officer's finding that Mrs. Lee's execution of the inventory worksheet was not hampered by a language barrier was not supported by the evidence in the administrative record, and that the hearing officer improperly refused to consider Mr. Lee's force majeure defense; the circuit court remanded the matter for further proceedings.
On remand, the hearing officer submitted additional findings of fact and conclusions of law to the State Health Officer, in compliance with the circuit court's remand order, finding, in part:
"The Vendor Contract signed by Ms. Lee outlines the vendor's and the Department's responsibilities (Sections I and II), including compliance with all applicable regulations found in Ala. Admin. Code r. 420-10-2 (2014) and unannounced monitoring visits, which 'may include compliance purchases and/or inventory audits to collect evidence of improper VENDOR practices'; termination (Section III); clauses governing debarment, suspension, financial necessity, emergency cancellation, amendment, standard of practice, assignment and severability; and a sanction schedule. The contract also includes an acknowledgment by the vendor that he/she has *868 read the entire contract and fully understands and accepts its requirements.
"...[T]he undersigned finds no defense available to Ms. Lee-whether under a theory of mistake, lack of assent, or unconscionability-regarding her claims that a language barrier, either oral or written, precluded her from understanding the inventory worksheets that she signed following the Department's July 17, 2013 and September 17, 2013 inventory audits at First Avenue. Both Alabama and federal contract law are clear that signatories to contracts are responsible to know and understand the provisions of the documents they sign; in particular, Alabama law does not excuse a party from the enforcement of a contract provision because he states that he could not read the document or understand it. Mason [v. Acceptance Loan Co. ], 850 So.2d [289] at 296 [ (Ala. 2002) ] ; Mitchell Nissan, Inc. [v. Foster ], 775 So.2d [138] at 140 [ (Ala. 2000) ]. These holdings were extended in Alabama under Scurtu [v. International Student Exch., 523 F.Supp.2d [1313] at 1320-21 [ (S.D. Ala. 2007) ], to an inability to read or understand a document due to a language barrier; courts in other jurisdictions, including the cited cases from New York and New Jersey, have made similar findings.
"There was no evidence presented that Ms. Lee could not read the inventory worksheets, that she could not understand them, that she was not given the opportunity to ask anyone what they meant, that she ever asked anyone to read or explain them to her before she signed them or that she ever asked what they were. See Scurtu, 523 F.Supp.2d at 1321. Ms. Lee's clear and consistent testimony was that she did not read the inventory worksheets-she simply signed them because the Department's investigator asked her to do so and because she thought it was routine monitoring, although she acknowledged that routine monitoring does not require a signature. She said she understood that the word 'certify' means to 'make sure.'
"In response to questions from the undersigned, Ms. Lee stated that if she does not understand a question, she 'wants to be sure I understand ... and then I will ask.' She did not ask for clarification regarding any questions posed at the hearing by the Department's counsel, although she was advised that she could do so. Both of the Department's witnesses testified that they did not perceive any difficulty regarding Ms. Lee's ability to communicate with them, and no one assisted her in responding to the Department's questions during either visit. When asked to retrieve the formula receipts during the first visit, Ms. Neumann testified that Ms. Lee went to the back of the store and retrieved them. Ms. Neumann stated that she found no need to avail herself of the Department's language line during the first visit. Ms. Lee has been in the United States for fourteen years.
"....
"Based on the evidence presented during the administrative hearing and the applicable contract law, the undersigned finds no evidence that Ms. Lee's compliance with the WIC Vendor Contract was hampered by a language barrier and finds no defenses in this regard available to Ms. Lee to negate her signatures and her assent to the statements included on the inventory worksheets."
The hearing officer also determined that, although the defense of force majeure was available to avoid contract obligations, that defense did not apply here:
"Ms. Lee testified that she is unable to produce receipts to reconcile the *869 shortfall in First Avenue's documented inventory because the building was damaged by lightning and flooding on August 3, 2013, ruining her receipts. Ms. Lee explained that the receipts were stored in a desk in First Avenue's back room, on which she kept a computer utilized strictly for printing labels and alphabetizing food items. She does not keep a record of invoices or receipts on the computer. She stated that the receipts in the desk became wet during the flooding and were stuck together and unusable, but the computer was not damaged.
"Sometime later, when the room was being repaired by the landlord in August and September 2013, Ms. Lee lost the milk receipts. She stated that the box in the back room storing her receipts was moved several times while the repairs were being made and was eventually misplaced.
"Ms. Lee's inability to produce the receipts that were placed in a box and misplaced while the landlord was making repairs to the building following the August flooding was not the result of an act of God. It is not clear from the testimony exactly what the box contained, although it appears that it included receipts for inventory purchased by Ms. Lee between August 4, 2013, following the flooding that occurred on August 3, 2013, and September 17, 2013, the end of the audit period. The disappearance of that box is solely attributable to negligence on the part of Ms. Lee.
"The central issue, then, is whether the flood of August 3, 2013 constituted an act of God that excuses Ms. Lee's inability to meet her recordkeeping obligations under the WIC Vendor Contract and merits her disqualification from the WIC Program.
"To be considered an 'act of God,' the force of nature causing the injury must have been the proximate cause of the injury, such that no other act could have prevented the result. See Hill Air of Gadsden, Inc. [v. Marshall ], 526 So.2d [15] at 16-17 [ (Ala. 1988) ] ; Bradford [v. Universal Construction Co. ], 644 So.2d [864] at 866 [ (Ala. 1994) ]. In this case, the flooding at First Avenue damaged the receipts inside the desk, but did not affect the computer on the desk. The Department's letters of September 24, 2013 and October 11, 2013 sought 'all original records [in the form of invoices/receipts that identify the quantity and prices] that show the purchases by your store of all infant formula and all whole, 2%, 1%, and fat-free milk between July 17, 2013, through September 17, 2013'; however, Paragraph 41 of the vendor contract merely requires the vendor to provide upon request 'any and all records pertinent to this Contract for review including records of purchases of WIC items for resale and Food Instruments and Cash Value Vouchers. These records must include a detailed listing of items and quantities purchased and names and addresses of the wholesaler or seller.' Id. Had Ms. Lee exercised ordinary care by utilizing the computer or any other backup system to store the receipts or copies thereof, she could have avoided the total destruction of her records and met her obligations under the WIC contract.
"The undersigned finds that the destruction of her only business records by any means-whether by flood, fire, theft, etc.-was 'among the probable contingencies which [Mrs. Lee] should have foreseen and provided for.' Glover [v. Taylor & Co.], 41 Ala. [124] at 130 [ (1867) ]. Indeed, even after the flooding-and the subsequent loss of her records-Ms. Lee did not make any effort *870 to further secure her records or improve upon her recordkeeping methods; she simply transferred her business records from the desk in the back room to a random box, which was subsequently lost. Ms. Lee does not know when the box was misplaced.
"The undersigned thus concludes that the loss of Ms. Lee's inventory receipts was not due to an act of God, as defined by the applicable state and federal case law, and does not excuse her responsibilities under the WIC Vendor Contract by reason of force majeure. Ms. Lee is thus responsible for a documented inventory shortfall of $7,790.02 for formula and $3,086.52 for milk for the period July 17, 2013 through September 17, 2013. Upon a finding that a vendor's documented inventory for a certain period of time does not comport with its WIC redemptions during that same time period, the Department's rules require it to disqualify the vendor from participation in the program and recoup the overcharges to the Department. Ala. Admin. Code r. 420-10-2-.05(5)(d) and (e)3(ii) (2014)."
(Citations to administrative record omitted.) On August 27, 2015, the State Health Officer entered the following order disqualifying First Avenue from participation in the WIC program for three years:
"The State Health Officer has reviewed this matter and determined that there was no evidence presented that Ms. Lee-a U.S. resident for 14 years-could not read the inventory worksheets, that she could not understand them, that she was not given the opportunity to ask what they meant, that she ever asked anyone to read or explain them to her before she signed them, or that she ever asked what they were. In short, there was no evidence that Ms. Lee's execution of the worksheets was hampered by a language barrier. Moreover, upon review of the Hearing Officer's thorough examination of contract law, the State Health Officer does not believe any legal defenses are available to First Avenue Meat and Fish Market which would preclude it from being bound by the WIC Vendor Contract. In regards to the force majeure defense, the loss of Ms. Lee's inventory receipts was not due to an act of God, as defined by the applicable state and federal case law.
"Overall the administrative record supports the Hearing Officer's findings and the State Health Officer agrees that the admissible evidence of record fully supports the conclusion that First Avenue Meat and Fish Market violated 7 C.F.R. § 246.12, Alabama Administrative Code rule 420-10-2-.05(5), and the WIC Vendor Contract.
"IT IS THEREFORE ORDERED, in accordance with Section 22-12C-2 of the Code of Alabama 1975, that the three-year disqualification of First Avenue Meat and Fish Market, owned and operated by Su Won Lee, from the WIC vendor program, is hereby affirmed."
On February 18, 2016, First Avenue filed in the circuit court a response objecting to the State Health Officer's decision on remand. On October 14, 2016, the circuit court entered its judgment, finding, in part:
"While hearing officers are presumed to be unbiased until a conflict of interest or other specific reason for disqualification is shown, [ Johnson v. United States Dep't of Agric., 734 F.2d 774] at 783 [ (11th cir. 1984) ], the facts of the case are particularly disturbing to this Court.
"The Court finds it necessary to note in reviewing the aforementioned findings that the Hearing Officer charged with reviewing this administrative matter initially recommended the three-year suspension, and issued a determination *871 based upon mistakes of law, as set forth in this Court's Order of May 13, 2015.
"This Court remanded this matter to the [Department] for review of the evidence presented during the administrative hearing under the proper legal framework and reversed First Avenue's revocation from participation in the WIC program.
"Clearly in remanding the matter, the Court contemplated the hearing examiner acting in her traditional role as the trier of fact to weigh the evidence, resolve conflicts in the evidence, and evaluate the credibility of the witnesses based upon the corrections of law advanced by this Court. A review of the Hearing Officer's determination by the Hearing Officer does not advance the interests of impartiality, which is supposed to be a linchpin of the administrative and judicial processes. There was no meaningful review of the record in light of this Court's Order on remand, and thus the adjudication of the Petitioner's administrative petition on remand poses serious due process questions.
"With regard to the alleged redemption of excess vouchers regarding infant formula, the Hearing Officer determined that as a matter of contract law, Mrs. Mi Kyung Lee (hereinafter 'Mrs. Lee'), who served as the store manager for First Avenue, was to be 'held to her representations' (Op. 12). Specifically, the Hearing Officer found that Mrs. Lee's signature upon the Inventory Worksheets at the conclusion of both audits bound her to her representation that the inventory count conducted by the [Department's] investigators was accurate. Id.
"The Court finds that the findings of the [Department] with regard to the alleged redemption of excess vouchers regarding infant formula, are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and is unreasonable, arbitrary, and capricious. Petitioner provided substantial evidence that (1) Mrs. Lee's ability to understand the terms of the Inventory Worksheet were substantially limited due to her language limitations; and (2) Mrs. Lee relied upon Investigator Don Bird's representations in signing the Inventory Worksheet, which she did not fully understand....
"The record is replete with evidence supporting Mrs. Lee's posture that she did not understand that which she signed. The Hearing Officer determined that Mrs. Lee demonstrated command of the English language because of her extended presence in the United States. Admin. Trans., p. 13. The Court finds this determination to be unsupported by the evidence.
"Mr. Bird testified during the administrative hearing that he completed the forms for Mrs. Lee. Admin. Trans. p. 79. Mrs. Lee testified that she relied upon Mr. Bird's representations, as he had been in the store on numerous occasions. Admin. Trans., pp. 85, 95-99. Mr. Bird's conscious decision not to provide the form to Mrs. Lee but rather to complete it himself and then to ask for Mrs. Lee's signature, and Mrs. Lee's own testimony regarding her limitations, establish that [the State Health Officer's] Order is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
"As such, the Court also finds that the Hearing Officer's determination with regard to a finding of fact-namely that Mrs. Lee's execution of the Inventory Worksheets was not hampered by a language barrier-was unsupported by the evidence as set forth in the administrative record.
*872 Moseley [Grocery v. State Dep't of Pub. Health, 928 So.2d [304] at 311 (Ala. Civ. App. 2005).
"With regard to the alleged redemption of excess vouchers regarding milk products, the Hearing Officer's determination is unsupported by the evidence set forth in the administrative record and was made in reliance upon an error of law.
"The record reflects that Petitioners provided an affidavit from the property owner, as well as images reflecting the extensive damage, all of which have been filed as part of the administrative record in this matter, suffered by Petitioner as a result of the storm, and in support of their position that said vouchers were destroyed, and that they were excused from performance.
"[The Department] asserts that the defense of force majeure is not available to Petitioners, and that the 'federal and state rules do not make provision for an exception therefrom due to force majeure events' while citing to 7 C.F.R. 246.12(l)(iii)(B) and Al[a]. Admin. Code, R. 420-10-2-.05(5)(e)3(ii)(2013)....
"The Court is not convinced. The defense of force majeure exists under Alabama state law. As set forth by the Alabama Supreme Court, when loss is proximately caused by an act of God which is not foreseeable, the Petitioner may not be liable for failure to effectuate the performance of a contract. Louisville & N.R. Co. v. Finlay, 233 Ala. 128[, 170 So. 207] (1936).
"This Court also finds the approach of the West Virginia Supreme Court to be persuasive and on point in this matter. In Foodland v. State of West Virginia Department of Health and Human Resources, 207 W.Va. 392[, 532 S.E.2d 661] (W.Va. 2000) the West Virginia Supreme Court addressed a comparable situation wherein a Petitioner asserted a defense which was not set forth in the WIC statute, but which affected the very question of whether the West Virginia Department of Health established that the vendor actually committed an overcharge violation. The West Virginia Supreme Court held that the Petitioner was not responsible for overcharging the WIC program where an employee committed the offense and the owner was not cognizant, effectively finding that scienter was a required element.
"The Eleventh Circuit has also ruled similarly regarding the defense of force majeure. In Tug Allie-B, Inc. v. United States, 273 F.3d 936, 944 (11th Cir. 2001), the Eleventh Circuit held that when Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent. 7 C.F.R. 246 does not enumerate exceptions to the general prohibition, and as such, [the Department] cannot unilaterally determine that additional exceptions are not to be implied to the detriment of Petitioner.
"The Hearing Officer's summary dismissal of Petitioner's defense regarding force majeure was an error of law, and the dismissal of clear evidence of said storm establishes that the [State Health Officer's] Order was unsupported by the evidence.
"THEREFORE, this Court finds that the imposition of the three-year disqualification period, the Opinion of the Hearing Officer on Remand, the Health Officer's Order on Remand, and [the Department's] adoption of said Order were and are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, made upon error of law, and were and are unreasonable, arbitrary, and capricious.
*873 "Accordingly, this Court hereby removes the imposition of the three-year disqualification period imposed by the Alabama Department of Public Health."
The Department filed its notice of appeal to this court on November 22, 2016. We have jurisdiction of this appeal pursuant to § 12-3-10, Ala. Code 1975.
Standard of Review
"We review the judgments of the circuit court without any presumption of correctness, since that court was in no better position to review the orders of the State Health Officer than is this court." Alabama Dep't of Pub. Health v. Bessemer Meat/Se. Meat, 216 So.3d at 451 (citing Ex parte Williamson, 907 So.2d 407, 413 (Ala. 2004) ).
Our review of the State Health Officer's decision is governed by § 41-22-20(k), Ala. Code 1975, which provides, in part:
"Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
"(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
"(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
"By that standard, this court must consider the evidence contained in the whole record and determine whether the record contains reliable, probative, and substantial evidence that sustains the orders of the State Health Officer. In making that decision, this court presumes that the agency decision is just and reasonable." Alabama Dep't of Pub. Health v. Bessemer Meat/Se. Meat, 216 So.3d at 452 (citing § 41-22-20(k), Ala. Code 1975 ).
Discussion
The circuit court found that the State Health Officer's decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, made upon error of law, and [was] unreasonable, arbitrary, and capricious." In reaching that conclusion, the circuit court determined that, contrary to the hearing officer's determinations, Mrs. Lee's certification that the inventory listed on the inventory worksheet was accurate was ineffective because of a language barrier and that First Avenue's failure to maintain documentation to support its inventory was excused by an act of God.
Pursuant to the Alabama Administrative Code provisions relating to vendor compliance and sanctions, the Department "shall" impose a "mandatory disqualification for three years" if a vendor engages in "[a]
*874 pattern of claiming reimbursement for the sale of an amount of a specific WIC food item that exceeds the vendor's documented inventory of that WIC food item for a specific period of time." Ala. Admin. Code (Dep't of Public Health), Rule 420-10-2-.05(5)(e)3(ii). In order to prove a pattern, the Department was tasked with showing that "during a single review ... a vendor's records indicate that, for a two month audit period, the vendor's redemptions for a specific food item exceeds its documented inventory." Ala. Admin. Code (Dep't of Public Health), Rule 420-10-2-.05(5)(f).
The Department provided testimony from WIC-program employees that demonstrated the methods and procedures employed by the Department in conducting its inventory audit of First Avenue. The Department also provided the audit forms completed from information provided by Mrs. Lee and inventory purchase receipts that First Avenue provided to the Department. Contained within those documents was the inventory worksheet that Mrs. Lee signed to certify that the counted inventory was accurate.
First Avenue asserted that it had additional infant formula in a back room of the store and that, because of a language barrier, Mrs. Lee failed to inform the investigators of the additional inventory and that Mrs. Lee did not know what she was signing when she certified that the counted inventory amount was accurate. The Department presented testimony from two employees regarding their direct involvement and interactions with Mrs. Lee, and both noted that they experienced no difficulty in communicating with Mrs. Lee. Neumann testified that Mrs. Lee went to the back of the store and retrieved formula receipts when she was asked to during the first visit. The hearing officer also questioned Mrs. Lee specifically regarding her actions when she does not understand something. Mrs. Lee responded: "If I don't understand, I want to make sure I understand ... And then I will ask." The hearing officer also noted that Mrs. Lee "did not ask for clarification regarding any questions posed at the hearing by the Department's counsel, although she was advised that she could do so."
The hearing officer noted in her original decision that, even if Mrs. Lee believed from her interactions with the WIC employees that the Department was conducting only routine monitoring, "the Department's subsequent correspondence of September 24, 2013, one week after its second visit, expressly notified First Avenue that it was 'conducting an inventory audit of your store for the period of July 17, 2013, through September 17, 2013,' " and "[t]he Lees had every opportunity at that time, and until October 28, 2013, to inform the Department of any additional inventory that might affect the outcome of the audit and/or to inquire further as to the audit process." (Footnotes omitted.) The hearing officer further noted that, "even if [she] were to assume as true [Mrs.] Lee's testimony that First Avenue possessed $10,000.00 in formula stock at the beginning of the audit period on July 17, 2013, and $5,000.00 worth at the end of the audit period on September 17, 2013 ..., there would still be an inventory shortage of $2,790.02 that would require the Department to disqualify First Avenue from participation in the WIC Vendor Program pursuant to 7 C.F.R. § 246.12(1)(3)(B) and Ala. Admin. Code r. 420-10-2-.05(5)(e)3(ii) (2013)."
To account for her inability to provide receipts to document First Avenue's milk products, Mrs. Lee initially testified that the milk receipts had been destroyed from a water leak due to a storm. Mrs. Lee also testified that a computer that was located on the same desk upon which the receipts *875 had been stored was not damaged. Mrs. Lee later testified that she had placed those receipts in a box and that the box had been misplaced during the storm-damage repair. The hearing officer found that "[Mrs.] Lee's inability to produce the receipts that were placed in a box and misplaced while the landlord was making repairs to the building following the August flooding was not the result of an act of God.... The disappearance of that box is solely attributable to negligence on the part of [Mrs.] Lee."
The hearing officer, who had the advantage of witnessing Mrs. Lee's testimony, could have found Mrs. Lee's testimony to be credible. Instead, the hearing officer determined that a language barrier did not prevent Mrs. Lee from understanding and interacting with the Department and that First Avenue was unable to document its milk-product inventory because of Mrs. Lee's negligence, rather than an act of God. Credibility decisions were for the hearing officer to make. "[T]he circuit court is not authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency." Ex parte Williamson, 907 So.2d at 416-17 (citing Ex parte Beverly Enters.-Alabama, Inc., 812 So.2d 1189 (Ala. 2001) ; and State Health Planning & Dev. Agency v. Baptist Health Sys., 766 So.2d 176 (Ala. Civ. App. 1999) ).
The Department provided substantial evidence demonstrating that First Avenue's redemptions for infant formula and for milk products exceeded its documented inventory. Accordingly, based on the limited judicial review accorded agency decisions, the State Health Officer's decision, which is based on "reliable, probative, and substantial evidence" in the record, is due to be sustained.
Conclusion
The judgment of the circuit court is reversed, and the cause is remanded for the entry of a judgment affirming the State Health Officer's order. See Alabama Dep't of Pub. Health v. Bessemer Meat/Se. Meat, 216 So.3d at 453.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

In that case, the State Health Officer disqualified three other Birmingham-area vendors from participating in the WIC program based on inventory audits conducted during the same period involved here. Those three other vendors appealed the disqualifications to the Jefferson Circuit Court and eventually appealed to this court. See Alabama Dep't of Pub. Health v. Bessemer Meat/Se. Meat, 216 So.3d 448 (Ala. Civ. App. 2016).