REL: November 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2022-0949

_____

**Pooh Bear Academy**

**v.**

**Alabama Department of Human Resources**

**Appeal from Montgomery Circuit Court**
**(CV-22-900285)**

On Application for Rehearing

EDWARDS, Judge.

The opinion of June 23, 2023, is withdrawn, and the following opinion is substituted therefor.

Pooh Bear Academy ("PBA") appeals from a judgment entered by the Montgomery Circuit Court ("the circuit court") in favor of the Alabama Department of Human Resources ("DHR") that affirms DHR's decision to suspend PBA's day-care-center license after a hearing before an administrative law judge ("the ALJ").

This case involves a dispute under the Child Care Act of 1971 ("the CCA"), Ala. Code 1975, § 38-7-1 et seq. PBA is a "day care center" operated by Teresa Williams, see Ala. Code 1975, § 38-7-2(4) (defining "day care center," which is a type of "child care facility," see § 38-7-2(7), defining "child care facility"), and is required to have a license issued by DHR, see § 38-7-3(a).[1] Pursuant to the ore tenus rule, the following discussion reflects a summary of the evidence and inferences that could have been drawn therefrom, when viewed in a light most favorable to DHR. See Ex parte Williamson, 907 So. 2d 407, 416 (Ala. 2004); see also

---

[1]PBA originally operated without a license, apparently pursuant to an exception to the licensure requirement of § 38-7-3(a), Ala. Code 1975. See Ala. Code 1975, § 38-7-3(b)(1).

2

<u>Atlantic Coast Line R.R. v. Dunivant</u>, 265 Ala. 420, 424, 91 So. 2d 670, 674 (1956).

On April 21, 2021, PBA filed an application with DHR seeking to renew its day-care-center license, which was set to expire on June 6, 2021.[2]  <u>See</u> § 38-7-6(a) (discussing the license-renewal requirement). Section 38-7-6(b) requires DHR to

> "reexamine every child-care facility for renewal of license or approval, including in that process, but not limited to, the examination of the premises and records of the facility and the persons responsible for the care of children as [DHR] considers necessary to determine that minimum standards for licensing or approval continue to be met ….  If [DHR] … is satisfied that the facility continues to meet and maintain minimum standards which [DHR] prescribes and publishes, [DHR] shall renew the license or approval to operate the facility …."

On April 24, 2021, PBA requested a clearance report regarding V.F., who was a teacher at PBA, from the central registry for child abuse and neglect ("CAN"), which is maintained by DHR.  <u>See</u> § 38-7-7(a)(2) (discussing the "character, suitability, and qualifications of … persons

---

[2]PBA was the d/b/a name of Barney Child Care and Learning Center, an Alabama non-profit corporation apparently owned by Williams, on the original day-care-center license.  However, Williams filed the renewal application under PBA's name.

directly responsible" for the care of children among the "minimum standards" that DHR must "prescribe and publish" regarding child-care facilities); Ala. Admin. Code (Dep't of Hum. Res.), rr. 660-5-26-.06(2)(a)2.(ii) and 660-5-26-.06(2)(b)8. (requiring a child-care facility's employee records to include a request for clearance from the CAN central registry "on the required form, indicating whether a perpetrator record was found" and an update of such request "every five (5) years"); see also Ala. Code 1975, § 26-14-8 (discussing the central registry). On June 21, 2021, DHR sent PBA a letter informing it that V.F. had an "indicated" CAN report for physical abuse, see Ala. Admin Code (Dep't of Hum. Res.), r. 660-5-34-07(1), based on her inappropriate discipline of her three-year-old child in August 1997; the incident left "marks/bruises" on the child.

On July 29, 2021, Bridgette Smith, who was the licensing consultant that DHR had assigned to PBA's license-renewal application, inspected PBA's day-care center in connection with PBA's license-renewal request. See § 38-7-7(c) ("[DHR], in applying standards prescribed and published, as herein provided, shall offer consultation through employed staff or other specified persons to assist applicants and

4

licensees in meeting and maintaining minimum requirements for a license and to help them otherwise to achieve programs of excellence related to the care of children served."). Smith informed Williams that she would have to discuss with her supervisors what to do about V.F.'s indicated CAN report. During Smith's July 2021 licensing inspection, she and Williams also discussed certain other deficiencies at PBA's day-care center, and Smith thereafter reported 17 deficiencies to DHR regarding PBA's satisfaction of the "minimum standards" for its day-care center, including that V.F. had a substantiated CAN report on file.[3] Smith noted that Williams immediately had corrected most of the

---

[3]The evidence at the hearing before the ALJ, see infra, included a DHR publication discussing DHR's minimum standards in more detail, which had been provided to PBA. Those minimum standards included a statement that evidence of unsuitable character included an indicated CAN report and that such evidence "[would] be evaluated to determine whether or not it constitutes a danger to the children" and that a license application could be denied or a license revoked when an employee of unsuitable character was determined to have contact with children. The applicability of those minimum standards is undisputed. Also, effective September 13, 2021, the "minimum standards" were updated and republished as "performance standards." However, the above-quoted CAN provisions remained substantially unchanged in the "performance standards."

deficiencies at PBA's day-care center. PBA was given a 90-day compliance deadline of October 28, 2021, to correct all deficiencies.

After Smith's July 2021 licensing inspection, Smith and Williams had further discussions about V.F.'s indicated CAN report. Williams also discussed the issue of V.F.'s continued employment at PBA with Debbie Dodd, who was DHR's complaint-intake supervisor and who supervised Smith and four other licensing consultants. Dodd testified that Williams "just could not understand. And I just kept going back to her saying that [DHR] will have to make that decision."

On the morning of August 9, 2021, Smith informed Williams by e-mail that DHR's legal department had reviewed V.F.'s indicated CAN report, that DHR was not able to approve a waiver as to that report, and that "[t]he deficiency [would] stand until the employee is terminated or a cleared [CAN report] was received." Smith also informed Williams that all the other deficiencies noted during her July 2021 inspection had been corrected. Williams continued to dispute whether V.F.'s indicated CAN report should be treated as a deficiency for purposes of PBA's license-renewal application.

By e-mail on August 12, 2021, Smith again informed Williams of the continuing deficiency due to V.F.'s indicated CAN report. That same day, Williams sent Smith an e-mail with an attached letter stating that V.F.'s employment by PBA "ha[d] been terminated as requested per … Smith and … Dodd as the result of a substantiated [CAN report]." Smith and Dodd discussed Williams's letter and disagreed with her that they had requested that PBA terminate V.F.'s employment. Instead, they contended that they had merely informed Williams of what DHR considered necessary to correct the deficiency regarding V.F. Dodd sent Williams an e-mail asking her to correct her letter regarding the termination of V.F.'s employment by removing Dodd's and Smith's names from the letter. Dodd's e-mail further stated that, if Williams was putting a reason for V.F.'s termination, she could refer to the evidence of unsuitable character as described in the minimum standards. On August 20, 2021, Williams purportedly prepared a letter to DHR stating: "As stated by [DHR,] to correct the deficiency of suitability as a substantiated [CAN report] was indicated for [V.F.,] employment was terminated as of

7

August 11, 2021." Williams did not send that letter to DHR on August 20.

On September 2, 2021, Dodd received an anonymous complaint that V.F.'s employment had never been terminated, apparently after some parents whose child was enrolled at PBA had learned of the deficiency report. See Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-26-.10 (describing types of corrective actions DHR may impose and requiring that written notice of a deficiency report be posted at the child-care facility that is the subject of that report). Smith and Dodd investigated that complaint the following day. When they arrived at PBA's day-care center, Dodd initially remained outside "counting ratios" on the playground until Smith texted her that V.F. was inside the facility. According to Dodd, when she entered the day-care facility, V.F. "was sitting in the school-age classroom." Dodd stated that she had informed Williams about the anonymous complaint that she had received, but Williams denied that Dodd had told her about the complaint. Also, Williams admitted in a statement that she prepared for Smith and Dodd

that V.F. "was present in a room with children" when Smith and Dodd arrived, but she later denied that children had been present.

According to Williams and V.F., V.F.'s presence at PBA on September 3, 2021, when Smith and Dodd arrived was a coincidence; V.F. purportedly was at PBA only to complete paperwork for food stamps. Williams stated that V.F. was merely "waiting on her ride to come and pick her up." Nevertheless, Smith and Dodd prepared a deficiency report stating that, upon their arrival at PBA, V.F., a person with an indicated CAN report, was present in the facility. During the investigation on September 3, Dodd informed Williams that DHR still needed a proper letter regarding the termination of V.F.'s employment to clear that deficiency. Thereafter, Williams left PBA and returned 10-15 minutes later with the August 20 letter referred to above. During Williams's testimony, she stated that Dodd had threatened her and screamed at her about the need for the corrected letter regarding the termination of V.F.'s employment. The testimony on that issue was in conflict, however, and

the statement that Williams gave to Smith and Dodd on September 3 includes no reference to threatening behavior.[4]

Also, while they were at PBA on September 3, Smith again inspected the day-care center, along with Dodd, in conjunction with PBA's license-renewal application. Smith and Dodd reported five additional deficiencies since Smith's July 2021 licensing-renewal inspection, including three teacher-student ratio violations and two failures to post required reports. Williams corrected two of the teacher-student ratio deficiencies on September 3, 2021.

After Smith and Dodd's September 3 license-renewal inspection, Williams telephoned Bernard Houston, who was the director of DHR's child-care-services division. According to Houston, Williams stated that

---

[4]V.F. filed a request with DHR to have her name removed from the central registry. On September 17, 2021, DHR informed her that it could not remove her name from the central registry because expungement was only allowed after a "not indicated" finding. See Ala. Code 1975, § 26-14-8(e) ("In the case of any child abuse or neglect investigation which is determined to be 'not indicated,' the alleged perpetrator may request after five years from the completion of the investigation that his or her name be expunged from the central registry so long as [DHR] has received no further reports concerning the alleged perpetrator during the five years, at which time [DHR] shall expunge the name.").

Smith and Dodd had been unprofessional and rude to her. A few weeks later, Williams left Houston a voicemail stating that she would not allow Smith or Dodd back on PBA's property based on what she alleged was inappropriate behavior. She also requested that Houston assign PBA a different licensing consultant and requested that he telephone her. Houston did not grant Smith's request for a different licensing consultant to be assigned to PBA and did not return Williams's telephone call.

On September 24, 2021, Smith attempted to inspect PBA's day-care center to determine if Williams had corrected the deficiencies that had not previously been cleared. Williams was not present when Smith arrived at the day-care center, and the staff that was present would not allow Smith to enter the day-care center. Smith noted that, when PBA's 15-passenger van arrived at PBA, there were 16 children and the adult driver in that van. The driver, who apparently had telephoned Williams, handed Smith her cellular telephone. Williams told Smith that she was "not allowed at the facility and you need to leave my property." Smith thereafter reported the transportation and refusal-of-access-for-inspection deficiencies, along with the three remaining deficiencies from

11

the September 3 inspection, which she could not confirm had been corrected. After receiving Smith's report, Dodd contacted her supervisor regarding the situation and indicated that she was concerned that the refusal to allow Smith access might have been because V.F. was again present at PBA's day-care center.[5]

---

[5]Williams also had previously denied Smith access for inspection. On October 8, 2020, Smith performed an annual inspection of PBA's day-care center. Smith noted 25 deficiencies, including deficiencies relating to PBA's 15-passenger van and missing "suitability information" regarding some staff, "i.e., CAN forms and suitability letters." (It does not appear that V.F. was employed by PBA in October 2020.) Williams corrected approximately one-half of the deficiencies while Smith was present. PBA was given a 90-day compliance deadline of January 8, 2021, to correct the remaining deficiencies from the October 2020 annual inspection. Smith's follow-up inspections in November 2020 and December 2020 reflected that certain deficiencies had not been corrected as of the date of those respective inspections, and the latter inspection included an additional deficiency relating to the lack of supervision of five children who were present in a classroom, which Williams corrected at that time. Smith returned for her 90-day compliance inspection on January 11, 2021, but, according to Smith, PBA's staff denied her access to PBA's day-care center, which Smith noted as an additional deficiency. After Williams arrived at the day-care center, Smith was allowed to perform her inspection, and she noted additional deficiencies, which were corrected on that day. A few deficiencies from the October 2020 annual inspection remained uncorrected as of January 11, but it was undisputed that PBA eventually corrected those remaining deficiencies. According to Williams, Smith had already completed her January 11, 2021, inspection when Williams arrived at the day-care center, Smith behaved

On September 27, 2021, Smith again went to inspect PBA's day-care center, and the staff refused to allow her access. Dodd accompanied Smith for the inspection. Williams told Smith and Dodd via telephone that they were "not allowed at the facility and you need to leave my property." Smith and Dodd reported the refusal-of-access-for-inspection deficiency, along with the deficiencies from Smith's September 24, 2021, inspection and the remaining deficiencies from their September 3, 2021, inspection, which they could not confirm had been corrected.

After Williams arrived at PBA's day-care center, Dodd handed a letter to Williams from DHR regarding PBA's license renewal. The letter informed Williams that PBA's day-care-center license would not be renewed if PBA was not in full compliance with the minimum standards applicable to day-care centers and that "refusal to submit to investigation by DHR or refusal to admit authorized DHR representatives during reasonable times for the purpose of investigation [would] preclude the renewal of [PBA's] license." The letter also recounted the circumstances

inappropriately toward her when she arrived, and she complained to DHR about Smith's purportedly inappropriate behavior.

13

regarding V.F. and reminded Williams "that allowing [V.F.] to work around the children [was] a violation" of pertinent standards and would preclude the renewal of PBA's day-care-center license. The letter further informed Williams that Smith was an authorized representative of DHR, that she must be permitted to complete her investigation regarding outstanding deficiency matters, and that DHR would not renew PBA's day-care-center license without the completion of Smith's investigation.

On September 29, 2021, DHR hand delivered to Williams a letter ("the suspension letter") suspending PBA's day-care-center license, effective immediately pending the outcome of a hearing, pursuant to § 38-7-11 of the CCA and Ala. Code 1975, § 41-22-19(d) of the Alabama Administrative Procedure Act ("the AAPA"), Ala. Code 1975, § 41-22-1 et seq.[6]  The suspension letter stated that the "SUSPENSION [was]

---

[6]Section 38-7-11, Ala. Code 1975, states:

"[DHR] shall have the right and its authorized representatives shall be afforded reasonable opportunity, to inspect … any child-care facility seeking a renewal of a license … pursuant to this chapter ….  Such inspection shall include, but not be limited to, premises, services, personnel, program, accounts and records, interviews with agents and employees of the child-care facility being inspected and interviews with

14

any child or other person within the custody or control of said child-care facility. Such inspection shall be made at any reasonable time, without prior notice, and as often as necessary to enforce and administer the provisions of this chapter. It shall be the duty of [DHR], through its agents, to conduct the inspections authorized hereinabove. If any such inspection of a licensed or approved child-care facility discloses any condition, deficiency, dereliction or abuse which is, or could be, hazardous to the health, the safety or the physical, moral or mental well-being of the children in the care of the child-care facility being inspected, the same shall at once be brought to the attention of [DHR], and [DHR] shall have the power to revoke without notice the license … of such child-care facility. In this event, the child-care facility shall not operate during the pendency of any proceeding for fair hearing or judicial review, except under court order."

Section 41-22-19(d), Ala. Code 1975, states:

"If the agency finds that danger to the public health, safety, or welfare requires emergency suspension of a license and states in writing its reasons for that finding, it may proceed without hearing or upon any abbreviated hearing that it finds practicable to suspend the license. The suspension shall become effective immediately, unless otherwise stated therein. The suspension may be effective for a period of not longer than 120 days and shall not be renewable. An agency shall not suspend the same license for the same or a substantially similar emergency within one calendar year from its first suspension unless the agency clearly establishes that it could not reasonably be foreseen during the initial 120-day period that such emergency would continue or would likely reoccur during the next nine months. When such summary suspension is ordered, a formal suspension or

necessary because of the imminent danger to the health, safety, and welfare of the children who attend the center." (Capitalization in original; some emphasis omitted.) The suspension letter further stated that the suspension was based on V.F.'s employment; PBA's refusal to allow Smith to perform her inspection on September 24, 2021, to verify the correction of outstanding deficiencies, including the deficiency regarding V.F.'s employment, and to verify compliance with the minimum standards; and PBA's refusal to allow Smith and Dodd to perform their inspection on September 27, 2021, to verify whether V.F. was still "working around the children" and to verify compliance with the minimum standards. According to the suspension letter, PBA's refusal to allow inspections on September 24 and on September 27 "pose[d] a risk of harm to the health, the safety, or the physical, moral, or mental well-being of the children at [PBA]."[7] The suspension letter also informed

---

revocation proceeding under subsection (c) of this section shall also be promptly instituted and acted upon."

See also Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-26-.10.

[7]Based on Williams's refusal to allow Smith access to PBA's day-care center, Amanda Laney, who was a CAN investigator for the Elmore

Williams that PBA's day-care center could not operate while its license was suspended, that PBA was "entitled to [a] suspension/pre-revocation hearing," that she would be "notified of the time, date, and place of the hearing by separate letter," and that a "detailed statement of issues to be considered at the pre-revocation hearing will follow in the near future." The record does not indicate whether DHR made any other communication with Williams regarding the hearing before October 8, 2021, when PBA requested a fair hearing regarding the suspension of its license pursuant to the suspension letter. See § 38-7-9; see also Ala.

---

County Department of Human Resources, was sent to PBA to perform a welfare check on September 28, 2021, to confirm that V.F. was not present and that the children were receiving adequate supervision. Laney testified that, when she initially arrived at PBA, she was refused entry by Annie Cooper, who was the assistant director of PBA, because Williams had told Cooper not to allow Laney into the facility. After leaving the premises and consulting with her DHR supervisor, Laney returned to PBA with law-enforcement officers, was again refused entry, but was told that Williams would be at PBA in five minutes. After Williams arrived, she allowed Laney into PBA's facility and allowed her to very briefly observe children and classrooms to confirm the teacher-child ratios. However, when Laney requested a list of the children's names and the contact information for their parents for purposes of her investigation regarding whether V.F. had continued to work with children at the day-care center, Williams refused to provide that information and told Laney to leave, which Laney did.

17

Admin. Code (Dep't of Hum. Res.), r. 660-5-26-.11; Ala. Admin. Code (Dep't of Hum. Res.), r. 660-1-5-.03.

On October 28, 2021, DHR sent Williams a letter ("the revocation/application-denial letter") notifying her that PBA's license had been suspended effective September 29, 2021, pending a hearing; that the "SUSPENSION [was] necessary because of the imminent danger to the health, safety, and welfare of the children who attend the childcare center" (capitalization in original; some emphasis omitted); and that PBA's license remained suspended. The revocation/application-denial letter continued:

> "[DHR] has sufficient reason to determine that the day care center license issued to [PBA] … should be REVOKED. The statutory and regulatory authority for the revocation of the license is found in [Ala. Code 1975, §] 38-7-8,[8] [§] 38-7-9, [§] 38-7-11, and [§] 41-22-19, and in the [Ala. Admin. Code (Dep't of Hum. Res.), rr.] 660-5-26[-.01 et seq.]

---

[8]Section 38-7-8, Ala. Code 1975, describes DHR's authority to "revoke or refuse to renew" a license based on, among other things, the "consistent fail[ure] to maintain" required standards, furnishing misleading statements to DHR, the "fail[ure] or refus[al] to submit to an investigation," the "fail[ure] or refus[al] to admit" DHR's authorized representative, and the failure to maintain the day-care facility in a safe condition.

"Furthermore, this letter is to inform you that [DHR] has sufficient reason to determine that the application for a license … to operate [PBA] … should be DENIED. This DENIAL is based on … § 38-7-8.

"… Section 38-7-8 states that [DHR] may revoke or refuse to renew the license or the approval of any child-care facility should the facility '(1) Consistently fail to maintain standards prescribed and published by [DHR], (2) Violate the provisions of the license issued, … (6) Fail or refuse to admit authorized representatives of the Department at any reasonable time for the purpose of investigation, [or] (7) Fail to provide, maintain, equip and keep in safe and sanitary condition premises established or used for child care as required under standards prescribed by [DHR] or as other required by any law, regulation or ordinance applicable to such facility.' The following issues are to be considered at the pre-revocation/denial hearing:

"A.  SUSPENSION OF [PBA's] LICENSE

"….

"1.  By letter dated [September 29, 2021], you were notified that [DHR] decided to suspend the license of [PBA]. This suspension was based on conditions considered hazardous to the health, safety, or physical, moral, or mental well-being of the children in your care.

"B.  FAILURE  OR  REFUSAL  TO  ADMIT AUTHORIZED REPRESENTATIVES OF [DHR] AT ANY REASONABLE  TIME  FOR  THE  PURPOSE  OF INVESTIGATION

"….

19

"On or about September 24, 2021, during regular business hours, an authorized DHR employee returned to [PBA] for the purpose of investigating whether [V.F.] was working at [PBA] and to investigate whether there were any deficiencies that would prevent renewal of [PBA's] license. [PBA] employees and [Williams] refused the authorized DHR employee access to the [PBA] facility. A [PBA] employee put [Williams] on the phone with the authorized DHR employee, and [she] told her that she could not enter the [PBA] facility or be on the premises. Additionally, [Williams] called the DHR Children Services office on that same day and left a message that [she] would not allow the authorized DHR employee access to [PBA].

"On or about September 27, 2021, during regular business hours, two authorized DHR employees returned to [PBA] for the purpose of determining whether [V.F.] was working at the facility and to investigate whether there were any deficiencies that would prevent renewal of your license. The authorized DHR employees were again denied access to the facility by [Williams]. [Williams was] informed verbally and in writing that continued refusal to allow the authorized DHR employees access to the facility would likely result in [PBA's] license being revoked and/or denied. [Williams] continued to deny the authorized DHR employees' access to the facility to conduct their investigation, which prevented the investigation from occurring.

"C. FAILURE TO PROVIDE, MAINTAIN, EQUIP AND KEEP IN SAFE AND SANITARY CONDITION PREMISES

ESTABLISHED OR USED FOR CHILD CARE AS REQUIRED UNDER STANDARD PRESCRIBED BY [DHR], OR AS OTHERWISE REQUIRED BY LAW, REGULATION OR ORDINANCE APPLICABLE TO SUCH FACILITY

"[Discussion of alleged failure to supervise on September 24, 2021]

"D.    VIOLATIONS OF PROVISIONS OF THE LICENSE

"….   [PBA] violated the provision of [its] license in a manner that was hazardous to the health and safety of the children in [its] facility as follows:

"1.  [Discussion of the failure to allow DHR representatives access to PBA's day-care center on September 24, 2021, and September 27, 2021]

"2.  [Discussion of the failure to allow a DHR representative access to PBA's day-care center on January 11, 2021.  See note 5, supra.]

"….

"E.    CONSISTENT FAILURE TO MAINTAIN STANDARDS PRESCRIBED AND PUBLISHED BY [DHR]

"[Extensive discussion regarding PBA's history of deficiencies in October, November, and December 2020 and in July and September 2021.]

> "The regulatory authority for the SUSPENSION and
> DENIAL/REVOCATION is found in [Ala. Admin. Code rr.]
> 660-5-26[-.01 et seq.] ….
>
> "You are entitled to a suspension/pre-revocation/denial
> hearing. You will be notified of the time and place of the
> hearing by separate letter."

(Capitalization in original; some emphasis omitted.) On November 9, 2021, PBA timely requested "a fair pre-revocation/denial hearing," referencing the revocation/application-denial letter. See § 38-7-9, r. 660-5-26-.11, and r. 660-1-5-.03.

The respective fair-hearing proceedings were consolidated, and, in December 2021, the ALJ conducted ore tenus proceedings regarding the suspension of PBA's day-care-center license, the revocation of PBA's day-care-center license, and the denial of PBA's license-renewal application. On January 14, 2022, the ALJ entered a detailed order quoting substantially all the suspension letter and the revocation/application-denial letter and making findings of fact and conclusions of law. The January 2022 order stated that the issues regarding V.F. were "at the core of the suspension/denial/revocation," as was the refusal to allow

DHR's representatives to have access to PBA's day-care center for purposes of inspection. The January 2022 order continued

> "With the exception of the allegations regarding the individual employed by the PBA with an indicated [CAN], and … Williams and/or her employees refusing DHR employees access to the PBA, I find that the numerous violations of the minimum standards alleged by [DHR] were, for the most part, corrected by … Williams as she was made aware of them.

> "The evidence established that those deficiencies, standing alone and once corrected, would not have warranted the adverse licensing action taken by [DHR] against the PBA."

The ALJ then made findings of fact regarding the issues relating to V.F. and PBA's denial of access to Smith and Dodd, specifically noting that Williams had left Houston a voicemail stating that "because of what she considered inappropriate behavior by … Smith and … Dodd, they would not be allowed back on PBA premises." The order continued:

> "On September 24, 2021, … Smith returned to the PBA for an inspection to determine if outstanding deficiencies had been corrected. … Smith was denied access to the PBA at that time.

> "On September 27, 2021, … Smith and … Dodd again returned to the PBA for a licensing inspection. [They] were denied access to the center. They then handed delivered a letter to … Williams which stated:

23

"'According to [the minimum standards] "[a] renewal of a license shall be issued, if, upon investigation and re-examination, the child-care center continues to meet and maintain standards prescribed and published by [DHR]."

"'Your license was set to expire on June 6, 2021. You timely applied for renewal, so your license continues to be valid under the provisions of Ala. Code 1975[,] § 41-22-19(b) until a final determination of the license has been made.[9]

"'Your license will not be renewed if your facility is not in full compliance with the [minimum standards]. Also, refusal to submit to an investigation by DHR or refusal to admit authorized DHR representatives during reasonable times for the purpose of investigation will preclude the renewal of your license.

"'[Discussion regarding V.F.'s employment and denying Smith access to PBA on September 24]

"'According to the [minimum standards], "[DHR] may revoke or refuse to renew the license

---

[9]Section 41-22-19(b), Ala. Code 1975, states:

"When a licensee has made timely and sufficient application for the renewal of a license …, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court."

of the child care facility […] should the operator(s): [f]ail or refuse to submit to an investigation by [DHR] [or] [f]ail or refuse to admit authorized representatives of [DHR] at any reasonable time for the purpose of investigation." If you continue to refuse to submit to [DHR's] investigation, your license will not be renewed. If you continue to refuse to admit any authorized [DHR] representative at reasonable times to conduct the investigation, your license will not be renewed.'

"On September 29, 2021, DHR officials again went to PBA and were again denied access to the center. At that time, the suspension letter was hand delivered to … Williams."

After discussing pertinent law and the pertinent minimum standards, the January 2022 order concluded:

"In the matter now before me, I find that the PBA did, on more than one occasion, deny [DHR] and its authorized representatives the right to inspect the child-care facility.

"Given the nature of child-care facilities, which are charged with caring for young children in a supplemental or surrogate parent role, I find that the denial of access to the child-care facility of [DHR's] authorized representatives '… is, or could be, hazardous to the health, safety, or physical, moral, or mental well being of the children in the care of the child-care facility being inspected.' Therefore, I affirm [DHR's] decision to suspend the PBA's license.

"With regard to [DHR's] decision to revoke/deny the PBA's license, I conditionally affirm that decision, given that [DHR]'s authorized representatives were denied access to the PBA and thus were unable to determine if … conditions

existed at the PBA which 'is or could be, hazardous to the health, safety, or physical, moral, or mental well-being of the children in the care of the child-care facility being inspected.'

"[DHR] is directed to inspect/evaluate the PBA to determine the PBA's current compliance with the minimum standards. If [DHR] determines that PBA is in compliance with the minimum standards, then it is directed to issue to the PBA a license or a probationary status license, at [DHR's] discretion, upon such conditions that [DHR] deems appropriate to protect the well-being of the children in the care of the PBA."

See r. 660-5-26-.10(2)(b) (stating that DHR "may revoke or refuse to renew the license of the child care facility … should the operator(s): 5. Fail or refuse to submit to an investigation by [DHR]; [or] 6. Fail or refuse to admit authorized representatives of [DHR] at any reasonable time for the purpose of investigation"). We note that the suspension of PBA's license ended on January 27, 2022, 120 days after that suspension began on September 29, 2021. See authorities cited in note 6, supra.

It is undisputed that, after the entry of the January 2022 order, DHR inspected PBA's facility and thereafter renewed PBA's license to operate its day-care center. Based on the record before us (1) PBA did not seek further review of the ALJ's decision affirming DHR's determinations regarding whether its license was due to be revoked and

26

whether its renewal application was due to be denied based on the evidence presented at trial and (2) DHR did not seek further review of the ALJ's decision requiring it "to inspect/evaluate the PBA to determine ... PBA's current compliance with the minimum standards" and "to issue to ... PBA a license or a probationary status license, at [DHR's] discretion" provided PBA was in compliance with minimum standards as of the time of such posttrial inspection.[10] Instead, PBA timely filed a notice of appeal with DHR and filed a petition for judicial review in the circuit court regarding the ALJ's affirmance of the suspension of its day-care-center license. See § 41-22-20 and § 38-7-9. In its petition for judicial review,

_____

[10]Pursuant to Ala. Code 1975, § 41-22-19(b), a license "does not expire until the [renewal] application has been finally determined by the agency, and, in case the application is denied … until the last day for seeking review of the agency order." However, § 41-22-19(b) did not affect the finality of the January 2022 order, which affirmed DHR's denial of PBA's renewal application, albeit also requiring DHR to conduct a posttrial inspection and issue PBA a license if PBA was in compliance with the minimum standards when such inspection was conducted. PBA could have sought further review of the adverse adjudications as to the revocation of its license and the denial of its license application in the January 2022 order rather than choosing only to submit to a posttrial inspection, at least before DHR inspected the day-care center and renewed PBA's license, but PBA chose not to do so.

27

PBA alleged that the suspension of its license was erroneous for several reasons, and PBA requested that the circuit court "accept" the administrative record that DHR would submit, direct the parties to submit briefs, and set the petition for oral argument. DHR filed an answer to PBA's petition, denying the pertinent allegations thereof.[11]

The circuit court entered an order requesting that the parties brief, on the merits, the ALJ's affirmance of the September 2021 suspension. The briefs were due no later than May 19, 2022, and the parties filed their respective briefs on that day. On June 14, 2022, the circuit court entered a judgment affirming DHR's September 2021 suspension of PBA's day-care-center license because, according to the circuit court,

> "[a]fter careful consideration of the entire record and the parties' briefs, neither [DHR] nor the [ALJ] exceed[ed] their statutory authority, were erroneous, or acted unreasonably. The record contain[ed] substantial evidence of [PBA's]

---

[11]In response to a May 5, 2022, motion to supplement the record filed by PBA in the circuit court, DHR filed an objection stating that PBA "ha[d] expressly waived a review of the revocation of [its] license." (PBA's motion to supplement the record related to an April 2022 "not indicated" letter it had received from Elmore DHR based on Amanda Laney's inspection for "suspected child abuse/neglect" in September 2021.) It is unclear what express waiver DHR may have been referring to; the record before us does not include an express waiver regarding review of the ALJ's revocation decision.

pathological non-compliance, including multiple reports over the period of their licensure identifying several violations that support and justify the suspension of [PBA's] license by [DHR] and the affirmance of that suspension by the [ALJ]."

PBA filed a timely postjudgment motion, arguing that the circuit court had erred by not receiving oral argument under Ala. Code 1975, § 41-22-20(j), particularly since it had not provided the opportunity for the filing of responsive briefs, and by purportedly affirming the ALJ's January 2022 order on a ground other than the ground stated by the ALJ, who, PBA alleged, had himself erred by substituting his judgment for that of DHR. See Ex parte Beverly Enterprises-Alabama, Inc., 812 So. 2d 1189, 1195 (Ala. 2001) (stating that, unlike appellate review of a decision of a trial court, "[w]hen reviewing the decision of an administrative agency … an Alabama court will affirm only if the action and the stated basis for the action are correct"). The circuit court denied PBA's postjudgment motion, without conducting a hearing on that motion as requested by PBA. PBA filed a timely notice of appeal to this court.

PBA argues that the circuit court erred because, it says, (1) the circuit court implicitly determined that substantial evidence did not

support the ALJ's reason for the suspension of PBA's day-care-center license and substituted an alternative basis for that suspension[12] and (2) the ALJ's decision was capricious and clearly erroneous because there was no evidence of imminent danger to children as DHR stated in the suspension letter. PBA also contends that the circuit court erred by failing to grant its request for oral argument regarding the petition for judicial review pursuant to § 41-22-20(j). We pretermit any discussion of the merits of these arguments.

As DHR notes in its appellate brief, PBA has not challenged the ALJ's affirmance of the denial of its license-renewal application and the

---

[12]PBA questions whether the ALJ's January 2022 order was included in the record reviewed by the circuit court because the parties supplemented the record on appeal to this court to include that order. However, PBA admitted in its motion to supplement the record and admits in its appellate brief that it did not know whether the January 2022 order was inadvertently omitted from the record that DHR had provided to the circuit court or whether that order "does not appear in the clerk's record for some other reason." The June 2022 judgment states the circuit court reviewed and considered "the entirety of the record" and specifically references the ALJ's January 2022 order. Also, the circuit court ordered that the record on appeal be supplemented to include that order, which it could not have done had that order not been part of what the circuit court had received from DHR and reviewed. We will not presume that the circuit court erred in that regard.

30

revocation of its day-care-center license, which was based on PBA's failure to give Smith and Dodd access to PBA's day-care center for purposes of inspection, the same grounds that supported the suspension of its day-care-center license.[13] DHR suggests, therefore, that any error

_____

[13]PBA attempts to gain traction for its argument by noting the distinction between whether denying DHR access for purposes of inspection was a risk to the health, safety, or welfare of children or merely could have posed such a risk. Likewise, PBA notes that Amanda Laney's inspection had not revealed a danger to the children. Laney testified that, "from what [she] could tell" in the "couple of seconds" she was in the room with children, those children were safe and not in danger "that [she was] aware of." The fact that PBA allowed Laney to perform and complete an inspection after she was initially denied the opportunity to do so and the results of that inspection are of no help to PBA, nor is its attempt to draw a substantive distinction for purposes of this case between whether a risk to the health, safety, and welfare of the children existed or simply could have existed. It is DHR, not PBA, that controls the timing of its inspection, which is to disclose the conditions that existed when the inspection was requested, not at some other time of PBA's choosing and perhaps after corrective actions may have been taken. No subsequent inspection that PBA allowed reflects the conditions that existed when PBA denied the initial inspection request, and the evasion of an inspection allows an inference that conditions existed or could have existed that posed a risk to the children at the time access to the day-care center was requested and refused. To conclude otherwise would allow licensees to thwart the purpose of the Child Care Act of 1971 ("the CCA"), Ala. Code 1975, § 38-7-1 et seq., including § 38-7-11, which authorizes DHR to inspect "at any reasonable time, without prior notice, and as often as necessary to enforce and administer the provisions of [the CCA]," particularly because a licensee's refusal to allow an inspection when it is requested deprives DHR of the ability to obtain

regarding the suspension of PBA's day-care-center license should be treated as harmless error under Rule 45, Ala. R. App. P., because, it says, there was no injury to PBA from the previous suspension of its license. Under the circumstances, we consider that issue as a variation of the question whether the merits of the September 2021 suspension are moot, which is not addressed by the parties but may be considered by this court ex mero motu because it is a matter of subject-matter jurisdiction. See Ex parte Connors, 855 So. 2d 486, 489 (Ala. 2003).

In its reply brief, PBA responds to DHR's argument by contending that

> "suspension could be used by DHR in future adverse actions, just as it did in its intent to revoke and deny renewal, the suspension affects a substantive right of [PBA] and creates injury. Therefore, DHR's contention that a finding of error by this Court would support Rule 45 Ala. R. App. P. application is incorrect."

PBA is correct that § 38-7-8(1) and DHR's disciplinary regulations regarding license revocation discuss consideration of a party's consistent

---

the necessary evidence to make its decision whether a risk exists or could exist to the health, safety, or welfare of the children at the time the inspection is requested and denied.

failure to maintain the standards established by DHR as part of subsequent disciplinary cases. See Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-26-.10(1)(b)1. However, that avails PBA nothing under the circumstances, and PBA has not directed us to legal authority that would support the conclusion that it is harmed by the content of DHR's files on PBA or that it has a right to require DHR to expunge its records.

As noted above, the question whether an appeal no longer presents a justiciable controversy on the ground of mootness is a question of subject-matter jurisdiction that may be raised ex mero motu. Ex parte Connors, supra.

> "'"'The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties.' Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993)). 'A case becomes moot if at any stage there ceases to be an actual controversy between the parties.' Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999))."
>
> "'Chapman v. Gooden, 974 So. 2d 972, 983 (Ala. 2007) (first emphasis added). See also Steffel v. Thompson, 415 U.S. 452, 459 n.10, 94 S. Ct. 1209,

39 L. Ed. 2d 505 (1974) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").'

"South Alabama Gas Dist. v. Knight, 138 So. 3d 971, 974-75 (Ala. 2013).

"'"[A]n appeal will be dismissed as moot 'if an event happening after hearing and decree in circuit court, but before appeal is taken, or pending appeal, makes determination of the appeal unnecessary or renders it clearly impossible for the appellate court to grant effectual relief.'" Masonry Arts, [Inc. v. Mobile Cty. Comm'n,] 628 So. 2d [334] at 335 [(Ala. 1993)], quoting Morrison v. Mullins, 275 Ala. 258, 259, 154 So. 2d 16, 18 (1963).'

"Estate of Mollett v. M & B Builders, L.L.C., 749 So. 2d 466, 469 (Ala. Civ. App. 1999).

"'"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'

"King v. Campbell, 988 So. 2d 969, 976 (Ala. 2007) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293 (1895))."

Davis v. Davis, 221 So. 3d 474, 480-81 (Ala. Civ. App. 2016).

Based on the circumstances as they now exist, any decision by this court will not remedy the temporary suspension of PBA's day-care-center license; that suspension has ceased. Likewise, it would appear that the ALJ's affirmance of DHR's decision to suspend PBA's day-care-center license was based on the same grounds as his affirmance of DHR's revocation/application-denial decision, i.e., the refusal to submit to DHR's inspection when requested on September 24, 2021, and September 27, 2021. Thus, arguably, the latter decision and the basis for that decision as determined by the ALJ are now established as a matter of law. See Caton v. City of Pelham, 329 So. 3d 5, 22-26 (Ala. 2020) (discussing the application of res judicata and collateral estoppel in relation to previous administrative adjudications). And, certainly, such would remain in DHR's files regarding the revocation/application denial decision. Nevertheless, we need not determine whether PBA may be precluded in future disciplinary proceedings, which are speculative at this point, from challenging DHR's factual determinations as to the basis for its suspension of PBA's license. As stated above, this court can do nothing to remedy the temporary suspension of PBA's day-care-center

35

license at this juncture, and, accordingly, this appeal is due to be dismissed as moot.

APPLICATION GRANTED; OPINION OF JUNE 23, 2023, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.